**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 21-41056-PWB |
| MARIE SERONI MCCONNELL, | CHAPTER:  13 |
| DEBTOR. | JUDGE:  PAUL W. BONAPFEL |
| BANK UNITED, N.A. | **CONTESTED MATTER** |
| MOVANT. | |
| V. | |
| MARIE SERONI MCCONNELL, DEBTOR. | |
| K. EDWARD SAFIR, TRUSTEE. | |
| RESPONDENTS. | |

# NOTICE OF HEARING

**PLEASE TAKE NOTICE** that **BANK UNITED, N.A.** has filed a ***Motion for Relief from Automatic Stay*** and related papers with the Court seeking an order lifting the automatic stay to allow foreclosure.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold an initial telephonic hearing for announcements on the *Motion for Relief from Automatic Stay* at the following number: **Toll Free Number: 833-568-8864, Meeting ID: 161 794 3084** at **10:15 a.m.** on  August 31, 2022 , Courtroom 342, at the United States Courthouse, 600 East First Street, Rome, GA 30161

Matters that need to be heard further by the Court may be heard by telephone, by video conference, or in person, either on the date set forth above or on some other day, all as determined by the Court in connection with this initial telephonic hearing. Please review the "Hearing Information" tab on the judge's webpage, which can be found under the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the webpage for this Court, www.ganb.uscourts.gov for more information.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the

hearing. The address of the Clerk is: **United States Bankruptcy Court, 600 East First St, Room 339, Rome, GA 30161-3187**.

If a hearing on the Motion for Relief from the Automatic Stay (the "Motion") cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty (30) days of filing the motion and agrees to a hearing on the earliest possible date. If a final decision cannot be rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated: July 26, 2022

Respectfully Submitted,

/s/ Laura A. Grifka
Laura A. Grifka, (GBN 312055)
MCMICHAEL TAYLOR GRAY, LLC
Attorney for Creditor
3550 Engineering Drive, Suite 260
Peachtree Corners, GA 30092
Telephone: (404) 474-7149
Facsimile: (404) 745-8121
E-mail: lgrifka@mtglaw.com
MTG File No. 21-000013-07

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 21-41056-PWB |
| MARIE SERONI MCCONNELL, | CHAPTER:  13 |
| DEBTOR. | JUDGE:  PAUL W. BONAPFEL |
| BANK UNITED, N.A. | **CONTESTED MATTER** |
| MOVANT. | |
| V. | |
| MARIE SERONI MCCONNELL, DEBTOR. | |
| K. EDWARD SAFIR, TRUSTEE. | |
| RESPONDENTS. | |

### MOTION FOR RELIEF FROM AUTOMATIC STAY

**COMES NOW** BANK UNITED, N.A. ("Movant"), a secured creditor in the above-captioned case, by and through counsel, and moves this Court to enter an order granting its request for relief from the automatic stay imposed by 11 U.S.C. § 362. In further support of this Motion, Movant respectfully states:

1.

On August 27, 2021, Debtor filed a petition with the Bankruptcy Court for the Northern District of Georgia under Chapter 13 of Title 11 of the United States Bankruptcy Code.

2.

Movant holds a Promissory Note in the original principal amount of $80,546.00, dated September 9, 2008 and signed by the Debtor (hereinafter "Note").  Said Note is secured by a perfected Security Deed recorded on September 23, 2008 in the Gordon County Clerk of Superior Court in Book 1554 at Page 458 (hereinafter "Security Deed") which describes real property known as: 307 Stewart Dr. SW, Calhoun GA 30701 ("Property").  Subsequent to the original loan, the Debtor and Movant entered into a Loan Modification Agreement on or about July 3, 2014.  A copy of the Note, Security Deed, Allonge(s), and Assignment(s) of Mortgage, are attached hereto as **Exhibit A**.

3.

The Note is either made payable to Movant or has been duly indorsed. Movant, directly or through an agent, has possession of the Note. Movant is the original mortgagee or the beneficiary or the assignee of the Mortgage or Security Deed.

4.

The Debtor entered into a Loan Modification with the Movant on or about February 4, 2022, which recapitalized the pre- & post-petition delinquency through February 2022 and provided for payments of $501.79 beginning March 1, 2022.  A Motion to Approve Loan Modification Agreement was filed herein on April 1, 2022 and approved by Order of this court entered May 31, 2022 (Doc 29).

5.

The payoff due and owing to the Movant, good through September 1, 2022 is approximately $52,377.10, exclusive of legal fees and expenses incurred in the connection with the instant motion.

6.

Based on the Debtor's schedules, the value of the Property is approximately $100,000.00.

7.

Debtor is in breach of the terms of the Chapter 13 Plan and the Note, Security Deed and Loan Modification by failing to make the necessary post-petition payments and is now due for the May 1, 2022, post-petition payment.

Post-petition arrearages are as follows:

| Monthly Payment Amount | Post-Petition Months Owed | Total |
|---|---|---|
| $501.79 | 05.01.2022 – 07.01.2022 *(3 payments)* | $1,505.37 |
| *Less suspense balance* | | {$298.78} |
| **Total Amount Due** | | **$1,206.59** |

8.

Cause exists for relief from the automatic stay. Direct post-petition mortgage payments are not being made to the Movant as required by the Chapter 13 Plan. As such, Movant's interests are not adequately protected.

9.

Movant has incurred attorney's fee and costs in the filing and prosecution of this motion and requests recover of the same.

10.

In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant or Movant's successor or assignee.

**WHEREFORE**, Movant prays the Court as follows:

1.      Modify the Automatic Stay of 11 U.S.C. § 362(a) to permit Movant to enforce its security interest in the Property including but not limited to any non-bankruptcy remedies to foreclose and obtain possession;

2.      Modify Rule 4001(a)(3) of the Bankruptcy Code so that it is not applicable in this case and so Movant may immediately enforce and implement this order granting relief from the automatic stay;

3.      As an alternative to the relief prayed for above, grant adequate protection to Movant for its interest in the Collateral;

4.      Movant specifically requests permission to communicate with the Debtor and Debtor's counsel to the extent necessary to comply with applicable non-bankruptcy law; and

5.      Grant Movant such other and further relief as the Court deems just and proper, including but not limited to recovery of fees and costs.

Respectfully Submitted,

/s/ Laura A. Grifka_____
Laura A. Grifka, (GBN 312055)
*Counsel for Movant*
MCMICHAEL TAYLOR GRAY, LLC
3550 Engineering Drive, Suite 260
Peachtree Corners, GA 30092
Telephone: (404) 474-7149
Facsimile: (404) 745-8121
E-mail: lgrifka@mtglaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the date set forth below, I electronically filed the foregoing **Motion for Relief from Automatic Stay and Notice of Hearing** with the Clerk of Court using the CM/ECF system which will automatically send an e-mail notification of such filing to the parties or attorneys of record. I have also on this day caused a copy of the pleading to be placed in the first-class United States mail, postage prepaid, addressed to the recipients not participating in the CM/ECF system.  All parties served are as follows:

### <u>Via U.S. Mail</u>

Marie Seroni McConnell
307 Stewart Dr. SW
Calhoun, GA 30701

### <u>Via CM/ECF Electronic Service:</u>

Dan Saeger
Saeger & Associates, LLC
706 S. Thornton Ave., Ste. D
Dalton, GA 30720

K. Edward Safir
Melissa J. Davey, Standing Ch 13 Trustee
285 Peachtree Center Ave. NE
Suite 1600
Atlanta, GA 30303

Date:  July 26 , 2022.

/s/Laura A. Grifka
Laura A. Grifka, (GBN  312055)
*Counsel for Movant*
MCMICHAEL TAYLOR GRAY, LLC
3550 Engineering Drive, Suite 260
Peachtree Corners, GA 30092
Telephone: (404) 474-7149
Facsimile: (404) 745-8121
E-mail: lgrifka@mtglaw.com

# EXHIBIT A

Prepared by: AKEEM R. KENNEDY

## ORIGINAL

## NOTE

Multistate

SEPTEMBER 09, 2008
[Date]

307 STEWART DR SW, CALHOUN, GA 30701-7735
[Property Address]

**1.   PARTIES**
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means COUNTRYWIDE BANK, FSB
and its successors and assigns.

**2.   BORROWER'S PROMISE TO PAY; INTEREST**
In return for a loan received from Lender, Borrower promises to pay the principal sum of
EIGHTY THOUSAND FIVE HUNDRED FORTY SIX and 00/100

Dollars (U.S. $80,546.00        ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of SIX & SEVEN-EIGHTHS        percent (   6.875 %) per year until the full amount of principal has been paid.

**3.   PROMISE TO PAY SECURED**
Borrower's promise to pay is secured by a Mortgage, Deed of Trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4.   MANNER OF PAYMENT**
   **(A)   Time**
   Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on NOVEMBER 01, 2008    . Any principal and interest remaining on the first day of OCTOBER, 2038      , will be due on that date, which is called the "Maturity Date."
   **(B)   Place**
   Payment shall be made at
P.O. Box 660694, Dallas, TX 75266-0694
or at such place as Lender may designate in writing by notice to Borrower.
   **(C)   Amount**
   Each monthly payment of principal and interest will be in the amount of U.S. $529.13        . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.
   **(D)   Allonge to this Note for payment adjustments**
   If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

   ☐  Graduated Payment Allonge      ☐  Growing Equity Allonge      ☐  Other [specify]

**5.   BORROWER'S RIGHT TO PREPAY**
   Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6.   BORROWER'S FAILURE TO PAY**
   **(A)   Late Charge for Overdue Payments**
   If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR        percent (   4.000%) of the overdue amount of each payment  .

   **(B)   Default**
   If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of

payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

(C)  **Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

7.  **WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8.  **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9.  **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

ORIGINAL

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY _____
              *Laurie Meder*
            LAURIE MEDER
        SENIOR VICE PRESIDENT

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
M. SERONI MCCONNELL                     -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

Recorded 09/23/2008 10:20
Doc: SD Rcpt#: 270310
INTANGIBLE TAX: 243.00
Brian Brannon, C.S.C.
GORDON County, Ga
DEED Bk: 1554  Pgs: 458-465

RETURN TO:
WORLDWIDE RECORDING, INC.
9801 LEGLER RD
LENEXA, KS 66219
1-800-316-4682

~~Return To:~~
JANE DOCMAN
MS SV-79 DOCUMENT PROCESSING
P.O. Box 10423
Van Nuys, CA 91410-0423

Prepared by:
AKEEM R. KENNEDY

[Space Above This Line For Recording Data]

State of Georgia

# SECURITY DEED

THIS SECURITY DEED ("Security Instrument") is given on  SEPTEMBER 09, 2008  . The Grantor is
M SERONI MCCONNELL

and whose address is
307 STEWART DR SW, CALHOUN, GA 30701-7735
("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc., ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as grantee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
COUNTRYWIDE BANK, FSB
("Lender") is organized and existing under the laws of THE UNITED STATES        , and has an address of
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
Borrower owes Lender the principal sum of
EIGHTY THOUSAND FIVE HUNDRED FORTY SIX and 00/100

Dollars (U.S. $ 80,546.00        ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
  OCTOBER 01, 2038    . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns), and the

FHA Georgia Security Deed with MERS -- 4/96

MERS FHA Deed of Trust-GA
2004N-GA (11/07)(d/i)                    Page 1 of 6                    Amended 2/01

successors and assigns of MERS, with power of sale, the following described property located in GORDON County, Georgia:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which has the address of                         307 STEWART DR SW, CALHOUN
                                                      [Street, City]

Georgia 30701-7735   ("Property Address");
          [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.
   1.   **Payment of Principal, Interest and Late Charge.**  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
   2.   **Monthly Payment of Taxes, Insurance and Other Charges.**  Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4.  In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either:  (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary.  Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA.  If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument.  If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower.  Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).
   3.   **Application of Payments.**  All payments under paragraphs 1 and 2 shall be applied by Lender as follows:
   First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

MERS FHA Deed of Trust-GA
2004N-GA (11/07)                                           Page 2 of 6

**Second,** to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

**Third,** to interest due under the Note;

**Fourth,** to amortization of the principal of the Note; and

**Fifth,** to late charges due under the Note.

4.   **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.   **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.   **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7.   **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.   **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.   **Grounds for Acceleration of Debt.**

(a)  **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

MERS FHA Deed of Trust-GA
2004N-GA (11/07)                                            Page 3 of 6

(ii)   Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b)**   **Sale Without Credit Approval.**  Lender shall, if permitted by applicable law (including Section 341(d) of the Garn–St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)   All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)   The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c)**   **No Waiver.**  If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d)**   **Regulations of HUD Secretary.**  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e)**   **Mortgage Not Insured.**  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.   Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10.**   **Reinstatement.**  Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted.  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.  However, Lender is not required to permit reinstatement if:  (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11.**   **Borrower Not Released; Forbearance By Lender Not a Waiver.**  Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12.**   **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b).  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note:  (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13.**   **Notices.**  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14.**   **Governing Law; Severability.**  This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15.**   **Borrower's Copy.**  Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16.**   **Hazardous Substances.**  Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge.  If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

MERS FHA Deed of Trust-GA
2004N-GA (11/07)                                          Page 4 of 6

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS.   Borrower and Lender further covenant and agree as follows:

**17.   Assignment of Rents.**  To the extent permitted by applicable law, Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower:  (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18.   Foreclosure Procedure. If Lender requires immediate payment in full of all sums under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.**

**Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.**

**If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19.   Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20.   Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**21.   Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22.   Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**23.  Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider      ☐ Growing Equity Rider      ☐ Other [specify]
☐ Planned Unit Development Rider      ☐ Graduated Payment Rider

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

WITNESS:

_____    _M. Seroni McConnell_____    (Seal)
                              M SERONI MCCONNELL                -Borrower

_____    _____    (Seal)
                                                               -Borrower

_____    (Seal)
                                                               -Borrower

_____    (Seal)
                                                               -Borrower

**STATE OF GEORGIA,**          _Gordon_      County ss:
     Signed, sealed and delivered in the presence of: _____

_Shantate Scott_____ Shantate Scott
Unofficial Witness

_David R Yood_____ Cobb     County
Notary Public,
State of Georgia

DAVID R. YOOD
MY COMMISSION EXPIRES
MAR
22
2010
COBB COUNTY, GEORGIA
NOTARY PUBLIC

Prepared by: AKEEM R. KENNEDY

GEORGIA
GRANTOR: M SERONI MCCONNELL
LENDER: COUNTRYWIDE BANK, FSB
DATE OF SECURITY DEED: 09/09/2008

# WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_M. Seroni McConnell_ (Seal)
M SERONI MCCONNELL -Grantor

_____ (Seal)
-Grantor

_____ (Seal)
Notary Public -Grantor

MAR
22
2010

_____ (Seal)
-Grantor

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me _David R. Good_ on the date set forth above.

SHUNTAE SCOTT
Notary Public
Cobb County
State of Georgia
My Commission Expires Aug 18, 2010

Notary Public              _David R Good_              Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_M. Seroni McConnell_
Borrower M SERONI MCCONNELL              Borrower

_____              _____
Borrower              Borrower

Waiver of Borrower's Rights-GA

Page 1 of 1

## LEGAL DESCRIPTION
### (Exhibit A)

ALL THAT TRACT OF LAND CONSISTING OF 0.514 ACRE IN LOT 49 8 PART OF LOT 48, SPRING VALLEY SUBDIVISION, PLAT NO. 3, IN LAND LOT 279, 14TH DISTRICT, 3RD SECTION, CITY OF CALHOUN, GORDON COUNTY, GEORGIA.

COMMONLY KNOWN AS: 307 STEWART DR SW, CALHOUN, GA 30701

BEING THE SAME PREMISES AS CONVEYED IN DEED FROM CHARLES H. MCCONNELL, JR. RECORDED 6/08/01 IN BOOK 749, PAGE 5 IN SAID COUNTY AND STATE.

Recorded 04/13/2012 10:00
Doc: ASGN Rcpt#: 289781
Brian Brannon, C.S.C.
GORDON County, Ga
DEED Bk: 1757 Pg: 110

| This space for Recorder's use | Recording Requested By:<br>**Bank of America**<br>Prepared By:<br>**Danilo Cuenca**<br>**888-603-9011**<br>450 E. Boundary St.<br>Chapin, SC 29036 | When recorded mail to:<br>**CoreLogic**<br>**450 E. Boundary St.**<br>**Attn: Release Dept.**<br>**Chapin, SC 29036** |

Property Address:
**307 Stewart Dr SW**
**Calhoun, GA 30701-7735**

3/30/2012

MIN #                                MERS Phone #:  888-679-6377

## ASSIGNMENT OF SECURITY DEED

For Value Received, the undersigned holder of a Security Deed (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP** whose address is **451 7TH ST.SW #B-133, WASHINGTON DC 20410** all beneficial interest under that certain Security Deed described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Security Deed.

| | |
|---|---|
| Original Lender: | **COUNTRYWIDE BANK, FSB.** |
| Made By: | **M SERONI MCCONNELL** |
| Date of Security Deed: | **9/9/2008** |
| Original Loan Amount: | **$80,546.00** |

Recorded in Gordon County, GA on: 9/23/2008, book 1554, page 458 and instrument number 270310

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Security Deed to be executed on
4/5/2012

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By:                                              By:
_____              _____
**Aida Duenas**                                    **Cecilia Rodriguez**
**Assistant Secretary**                          **Assistant Secretary**

Witness: **Mercedes Judilla**              Witness: **Srbui Muradyan**

State of **California**
County of **Ventura**

On Apr 5, 2012 before me, Eric T Way, Notary Public, personally appeared Aida Duenas and Cecilia Rodriguez, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person (s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

_____
Notary Public: Eric T Way
My Commission Expires: Feb 7, 2013
(Seal)

ERIC T. WAY
Commission # 1835518
Notary Public - California
Los Angeles County
My Comm. Expires Feb 7, 2013

Recorded 02/21/2017 11:07
Doc# ASSN Rcpt#: 317723
Grant Walraven, C.S.C.
GORDON County, Ga
DEED Bk: 2057 Pg: 340

When Recorded Return To:
Bank of America
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683
Doc ID:

## ASSIGNMENT OF SECURITY DEED

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **BANK OF AMERICA, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FORMERLY KNOWN AS COUNTRYWIDE HOME LOANS SERVICING, LP, WHOSE ADDRESS IS 4909 SAVARESE CIRCLE, TAMPA, FL 33634, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Security Deed with all interest secured thereby, all liens and any rights due or to become due thereon to **CARRINGTON MORTGAGE SERVICES, LLC, WHOSE ADDRESS IS 1600 SOUTH DOUGLASS RD, ANAHEIM, CA 92806 (949)517-5235, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Security Deed is executed by **M. SERONI MCCONNELL** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR COUNTRYWIDE BANK, FSB, ITS SUCCESSORS AND ASSIGNS** and recorded in Deed **Book 1554 and Page 458** in the office of the Clerk of the Superior Court of **GORDON** County, **Georgia**.

**IN WITNESS WHEREOF**, the undersigned has hereunto set its hand on FEB 0 6 2017 (MM/DD/YYYY).

**BANK OF AMERICA, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FORMERLY KNOWN AS COUNTRYWIDE HOME LOANS SERVICING, LP**

By: _Regina L McKay_
Regina L. McKay
ASSISTANT VICE PRESIDENT

_Jamie L. Clayton_
Jamie L. Clayton                    Witness

STATE OF FLORIDA    COUNTY OF HILLSBOROUGH    FEB 0 6 2017
Sworn to (or affirmed) and subscribed before me _____ (MM/DD/YYYY), by Regina L. McKay, ASSISTANT VICE PRESIDENT authorized to sign on behalf of BANK OF AMERICA, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FORMERLY KNOWN AS COUNTRYWIDE HOME LOANS SERVICING, LP. He/she is personally known to me or has produced _N/A_ as identification.

_Martha Lucia Correa_
Martha Lucia Correa
Notary Public - STATE OF FLORIDA
Commission expires:    JAN 2 6 2019

MARTHA LUCIA CORREA
Notary Public, State of Florida
Commission FF 192644
My comm. expires Jan. 26, 2019

**Document Prepared By: Julio Estrada, Bank of America, N.A. 4909 Savarese Circle, Tampa, FL 33634
(800) 444-4302**
BOA01 _____ MIN _____ MERS PHONE 1-888-679-6377 MERS Mailing
Address: P.O. Box 2026, Flint, MI 48501-2026, T301612 (G 1) FRMGA1 BOA

Prepared By/Return To:
McMichael Taylor Gray, LLC
3550 Engineering Drive, Suite 260
Peachtree Corners. GA 30092
MTG File ███████████████
TAX ID: ████████████

CROSS INDEX TO DEED
BOOK 1554 PAGE 458
GORDON COUNTY,
GEORGIA RECORDS

## ASSIGNMENT OF SECURITY DEED

**FOR VALUE RECEIVED** the receipt and sufficiency of which are hereby acknowledged,  **Carrington Mortgage Services, LLC** does hereby grant, bargain, sell, convey and assign unto **BankUnited, N.A.,** whose address is c/o Carrington Mortgage Services, LLC,  1600 S. Douglas Road, Ste. 200-A, Anaheim, CA 92806, all its right, title, interest, obligations, and money due to and to become due thereon in and to that certain Security Deed (or Deed to Secure Debt) executed by M. Seroni McConnell, in the original amount of $80,546.00 for the use and benefit of Mortgage Electronic Registration Systems Inc. as nominee for Countrywide Bank, FSB, its successors and assigns, September 9, 2008 and recorded on September 23, 2008 in Book 1554 at Page 458, Gordon County, Georgia Records.

IN WITNESS WHEREOF, the undersigned has caused this instrument to be executed by its duly authorized officer, on this _14th_ day of _September_, 2021.

Witness
Print Name: _Barbara Cardenas_

Witness
Print Name: **Vivian Nguyen Dang**

Carrington Mortgage Services, LLC

By #1: _____

Print
Name: _____
Elizabeth Gonzales
Default Fulfillment Manager

Title: _____

By #2: _____   9/14/21

Print
Name: _____
Ami Bhavsar
Foreclosure Services Manager

Title: _____

(CORPORATE SEAL)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF _California_
COUNTY OF _Orange_

Subscribed and sworn to, before me _Jeanette Marie Vargas_ on this _14th_ day of _September_, 2021, by _Elizabeth Gonzales_ and _AMI BHAVSAR_, who proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Notary Public
My Commission Expires: _3-29-2024_

(NOTARY SEAL)

JEANETTE MARIE VARGAS
Notary Public - California
Los Angeles County
Commission # 2325722
My Comm. Expires Mar 29, 2024

Recorded 07/24/2014 10:30
Doc: AGRE Rcpt#: 303983
Grant Walraven, C.S.C.
GORDON County, Ga
DEED Bk: 1903 Pgs: 199-206

When Recorded Return To:                    ORIG.MTG $ __80,546.00__

Bank of America, N.A.                       NEW MTG $ __69,817.25__
11802 Ridge Parkway, Ste 100 HRM
Broomfield, CO 80021                        NEW MONEY $ __0.00__
Prepared By: Joel Mahoney
Recording Requested By:
Bank of America, N.A.
11802 Ridge Pkwy, Ste. 100, Broomfield, CO 80021
Document No. ███████████

███████████ ___ Space Above for Recorder's Us ███████████

**LOAN MODIFICATION AGREEMENT**

████████████████████

Borrower ("I")[1]: M SERONI MCCONNELL

Lender or Servicer ("Lender"): Bank of America, N.A.

Date of first-lien mortgage, deed of trust, or security deed ("Mortgage") and Note
("Note"): September 9, 2008

FHA Loan Number: ███████████  Rev. Recprd. Info: 9/25/2008 BK:1554 PG:458 INST#270310

Property Address ("Property"): 307 Stewart Dr SW, Calhoun, GA 30701

See attached Exhibit "A" for Legal Description

[1] If more than one Borrower or Mortgagor executes this document, each is referred to as "I." Words
signifying the singular (such as "I") include the plural (such as "we") and vice versa where
appropriate.

FHA-HAMP Loan Modification Agreement    One- to Four Family Bank of America, N.A. (rev. 111219/11)

████████████████████████████

Recording information: Mortgage recorded in Book/Liber 1554 at page(s) 458
of the _____ Records of Gordon, GA
(Name of Records)          (County and State, or Other Jurisdiction)

**Important Disclosures:** The Federal Housing Administration (FHA) requires that the Lender provide you with information to help you understand the modified mortgage and partial claim terms that are being offered to you. The Lender must timely provide you with clear and understandable written information about the terms, costs, and risks of the modified mortgage to enable Borrower to make informed decisions. This information is included below. Please read it carefully.

If my representations in Section 1 are still true in all material respects and if I have satisfied all of the preconditions in Section 2, this Loan Modification Agreement ("Agreement") will, as set forth in Section 3, modify (1) the Mortgage on the Property and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are called the "Loan Documents." Capitalized terms used in this Agreement and not otherwise defined have the meanings set forth in the Mortgage and/or Note, as applicable.

1. **My Representations.** I certify, represent to Lender, and agree:

   A. I am experiencing a financial hardship. As a result, (1) I am in default under the Loan Documents and (2) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments due under the Loan Documents.

   B. I live in the Property as my principal residence. The Property has not been condemned.

   C. Except as approved in writing by the FHA or Lender, there has been no change in the ownership of the Property since I signed the Loan Documents.

   D. I have provided documentation for all income that I receive. I am not required to disclose child support or alimony, unless I chose to rely on such income to qualify for the FHA-Home Affordable Modification Program ("Program").

   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including (but not limited to) the documents and information regarding my eligibility for the Program, are true and correct.

   F. I have made all payments required under a trial period plan, as required under the Program.

2. **Acknowledgements and Preconditions to Modification.** I understand, acknowledge, and agree:

Page 2

A. As a precondition to receiving this proposed modification of the Loan Documents, I must accept and fully execute the FHA's required subordinate mortgage (also called a Partial Claim Note and Security Instrument).

B. Prior to the Modification Effective Date (as defined in Section 3), if Lender determines that any of my representations in Section 1 are no longer true and correct, (1) the Loan Documents will not be modified, (2) this Agreement will not be valid, and (3) Lender will have all of the rights and remedies provided by the Loan Documents.

C. The Loan Documents will not be modified unless the Modification Effective Date (as defined in Section 3) has occurred.

D. The Lender has no obligation to make any modification of the Loan Documents if any of the requirements under this Agreement has not been met.

3. **The Modification.** If my representations in Section 1 continue to be true and correct and all preconditions to the modification in Section 2 have been met, the Loan Documents will automatically become modified (the "Modified Loan Documents") on April 1, 2014 (the "Modification Effective Date") and Lender will waive all due and unpaid late charges.

A. The new Maturity Date will be: March 1, 2044

B. The new principal balance of my Note will be $69,817.28 (the "New Principal Balance").

C. I promise to pay the New Principal Balance, plus interest, to the order of Lender.

D. The annual interest rate on the New Principal Balance will be 4.375%, beginning March 1, 2014, both before and after any new default. This fixed interest rate will remain in effect until principal and interest and all of the obligations due under the Modified Loan Documents are paid in full.

E. On September 1, 2014 and on the first day of each month thereafter until all of the obligations due under the Modified Loan Documents are paid in full, Borrower must make monthly payments of $531.98 (each, a "Monthly Payment"). Each Monthly Payment includes principal and interest of $348.59, plus the current required escrow payment of $183.39. My required escrow payments will likely adjust periodically in accordance with applicable law. If an escrow adjustment occurs, my total monthly payment would change accordingly.

F. I will be in default if I do not comply with the terms of the Modified Loan Documents.

4. **Additional Agreements.** I understand and agree:

A.  I accept the risks of entering into this Agreement. These risks include (but are not limited to):

   (1)  The FHA's subordinate lien will require a balloon payment when I pay off, sell, or refinance the Property, which may make these things more difficult to do. The FHA's subordinate lien may also make it more difficult to get additional subordinate lien financing.

   (2)  My modified loan will have a fixed interest rate that will not change. As a result, if the interest rate in my Loan Documents could go up and down based on changes in an index, my new fixed interest rate might sometimes be higher than I would have paid before this modification.

B.  All persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (1) a borrower or co-borrower is deceased; (2) the borrower and co-borrower are divorced and the Property has been transferred to one spouse in the divorce decree, in which event the spouse who no longer has an interest in the Property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (3) Lender waived this requirement in writing.

C.  This Agreement supersedes the terms of any modification, forbearance, trial period plan, or workout plan that I entered into with Lender before the date of this Agreement.

D.  Except to the extent modified by this Agreement, I will comply, with all covenants, agreements, and requirements of the Loan Documents, including (but not limited to) my agreement to pay all taxes, insurance premiums, assessments, Escrow Items, impounds, and all other similar obligations, the amounts of which may change in accordance with the terms of my Modified Loan Documents.

E.  The Modified Loan Documents are duly valid, binding agreements, enforceable in accordance with their terms and are hereby ratified and confirmed.

F.  All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect. Nothing in this Agreement satisfies or releases any obligation in the Loan Documents. Except as expressly modified by this Agreement, I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents and this Agreement.

G.  I will fully cooperate with Lender in obtaining any title endorsement(s) or similar title insurance product(s) and/or any subordination agreement(s) that are necessary or required by Lender's procedures and/or the Program to ensure that the Mortgage, as modified by this Agreement, is in first-priority lien position and is fully enforceable. The terms of this Agreement will not become effective, and this Agreement will be null and void, if Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s) on or before the Modification Effective Date.

H.  If an error is detected after execution of this Agreement, I will execute any documents reasonably necessary to (1) consummate the terms and conditions of this Agreement and/or (2) correct the terms and conditions of this Agreement (a "Corrected Agreement"). If I receive a Corrected Agreement from Lender, this Agreement will be void and of no legal effect. If I elect not to sign a Corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Program.

I.  Lender will collect and record, as applicable, personal information about me, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity ("Personal Information"). In addition, I consent to the disclosure of my Personal Information and the terms of the trial period plan and this Agreement by Lender to (1) any investor, insurer, guarantor, or servicer that owns, insures, guarantees, or services my first lien or subordinate lien (if applicable) mortgage loan(s), (2) companies that perform support services for the Program, and (3) any HUD-certified housing counselor.

J.  If any document related to the Loan Documents and/or this Agreement is lost, misplaced, or otherwise missing, I will comply with Lender's request to execute, acknowledge, initial, and deliver to Lender any documents Lender deems necessary ("Replacement Documents"). I will deliver the Replacement Documents within ten days after I receive Lender's written request for such Replacement Documents.

Page 5

In Witness Whereof, the Lender and I have executed this Agreement.
(Signatures must be signed exactly as printed, original signature required, no
photocopies accepted)

*M Seroni McConnell*

M Seroni McConnell
(Must Be Signed Exactly As Printed)

**07/03/2014**
MM/DD/YYYY

*Sandy Wallace*
Witness Signature

*Sandy Wallace*
Witness Printed Name

*July 3, 2014*
Witness Date

_____[Space below this line for Acknowledgement]_____

STATE OF *Georgia*

COUNTY OF *Gordon*

On the 3rd day of *July*   in the year *2014* before me, *Kathy Ingle*
Notary Public, personally appeared M Seroni McConnell, personally known to me or
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s)
is (are) subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument, the person(s), or entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*Kathy Ingle*_____ Notary Signature

*Kathy Ingle*_____ Notary Public Printed Name Please Seal Here

*January 4, 2016*_____ Notary Public Commission Expiration Date

KATHY INGLE
NOTARY
EXPIRES
GEORGIA
JAN 04 2016
PUBLIC
GORDON COUNTY

Page 6

**DO NOT WRITE BELOW THIS LINE.**

*******************************************************************************

THIS SECTION IS FOR INTERNAL USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans
Servicing, LP
   By: Urban Settlement Services, LLC, its attorney in fact

By: _____     Dated: _____ JUL 0 8 2014 ·

Name:    CRYSTAL MUAS
Title :  **ASSISTANT SECRETARY**

_____ [Space below this line for Acknowledgement] _____

STATE OF Colorado
COUNTY OF Broomfield

On 8 day of July in the year 2014 before me,   SHERRY LYNN BROWN
Notary Public, personally appeared       CRYSTAL MUAS
Assistant Secretary of Urban Settlement Services, LLC., attorney in fact for Bank of
America, N.A., personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

_____ Notary Signature

SHERRY LYNN BROWN _____ Notary Public Printed Name Please Seal Here
DEC 2 7 2015 _____ Notary Public Commission Expiration Date

SHERRY LYNN BROWN
NOTARY PUBLIC
STATE OF COLORADO
My Comm. Expires December 27 2015

EXHIBIT A

LEGAL DESCRIPTION

ALL THAT TRACT OF LAND CONSISTING OF 0.514 ACRE IN LOT 49 & PART OF LOT 48, SPRING VALLEY SUBDIVISION, PLAT NO. 3, IN LAND LOT 279, 14TH DISTRICT, 3RD SECTION, CITY OF CALHOUN, GORDON COUNTY, GEORGIA.

COMMONLY KNOWN AS: 307 STEWART DR SW, CALHOUN, GA 30701

BEING THE SAME PREMISES AS CONVEYED IN DEED FROM CHARLES H. MCCONNELL, JR. RECORDED 6/08/01 IN BOOK 749, PAGE 5 IN SAID COUNTY AND STATE.

Tax Id: ████████